IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODNEY C. FRAZIER,

    Petitioner,                    No. CIV S-08-0073 WBS JFM P

    vs.

TONY HEDGEPETH, Warden,

    Respondent.                  FINDINGS & RECOMMENDATIONS

                              /

          Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1995, petitioner was convicted of first degree murder, and the jury found petitioner personally used a firearm in the commission of the murder. Petitioner was sentenced to twenty-nine years to life in prison, which included four years for the weapons enhancement. Respondent has moved to dismiss this action as barred by the one-year statute of limitations. See 28 U.S.C. § 2244(d).

         Section 2244(d)(1) of Title 8 of the United States Code provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

/////

1

      (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).

      For purposes of the statute of limitations analysis, the relevant chronology of this case is as follows:

      1.  In January 1995, petitioner was sentenced to twenty-nine years to life in prison.

      2.  On May 22, 1995, petitioner appealed his conviction[1] and on September 11, 1996, the California Court of Appeal, Third Appellate District, affirmed the conviction.  (Lodged Document 1.)[2]

      3.  On May 12, 1996, petitioner filed a petition for writ of habeas corpus in the Court of Appeal, Third Appellate District.[3]  Lodged Document 2.  That petition was denied by order filed September 30, 1996.  Lodged Document 2.

---

[1] California Appellate Courts website, http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=3&doc_id=698276&doc_no=C020996, accessed September 9, 2008.

[2] Numbered lodged documents refer to documents lodged by respondent on April 16, 2008.

[3] May 12, 1996 is the date on which petitioner, proceeding pro se, delivered the state superior court habeas petition to prison officials for mailing.  See Lodged Document 2.  Under the mailbox rule, that date is considered the filing date of the petition.  See Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003).

4. On October 21, 1996,[4] petitioner filed a petition for review[5] in the California Supreme Court. On November 26, 1996, that petition was denied without comment. Lodged Document 3.

5. On January 8, 2008, petitioner filed the instant federal habeas corpus petition.[6]

A conviction is final for the purposes of the AEDPA statute of limitations at the expiration of the ninety day period for seeking certiorari to the United States Supreme Court. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). In the instant case, the California Supreme Court denied review on November 26, 1996. (Lodged Document 3.) The ninety day period for seeking certiorari ended on February 24, 1997. Thus, the statute of limitations began to run on February 25, 1997, and ran out on February 25, 1998, absent any tolling of the statute. Fed. R. Civ. P. 6(a) (excluding the day on which the period begins to run from the calculation of time).

Here, petitioner does not dispute the February 24, 1997 finality of direct review. Rather, petitioner contends he is entitled to equitable tolling. Petitioner filed his federal petition on January 8, 2008, almost ten years after the limitations period expired. Thus, the petition is time-barred absent equitable tolling for a substantial period of time.

The one-year limitation period "can be subject to equitable tolling" on an appropriate showing. Roy v. Lampert, 455 F.3d 945, 950 (9th Cir.2006) (citing (Beeler) at 1288). "Equitable tolling is applicable only 'if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.' Beeler, 128 F.3d at 1288(internal quotation marks omitted). These extraordinary circumstances must be 'the cause of [the] untimeliness.'

---

[4] California Appellate Courts website, http://appellatecases.courtinfo.ca.gov/search/case/ mainCaseScreen.cfm?dist=0&doc_id=56685&doc_no=S056824, accessed September 9, 2008.

[5] Review of the California Supreme Court's docket in S056824 confirms that petitioner filed a petition for review of his criminal appeal, not a petition for writ of habeas corpus, on October 21, 1996. Id.

[6] January 8, 2008 is the date on which petitioner, proceeding pro se, delivered the state superior court habeas petition to prison officials for mailing. See footnote 2.

1  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir.2003)." Roy, at 950.  Petitioner has the burden of
2  demonstrating an entitlement to equitable tolling.  See Espinoza-Matthews v. California, 432
3  F.3d 1021, 1026 (9th Cir.2005) (quoting Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir.2005)).
4  To meet this burden, petitioner must show that he pursued his " 'rights diligently . . . [and] that
5  some extraordinary circumstance stood in [his] way.' " Roy, at 950 (quoting Pace v.
6  DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005)).  An inmate's denial of access to his
7  legal materials can, in an appropriate circumstance, support equitable tolling of the limitation
8  period.  See Espinoza-Matthews, at 1072; see also Lott v. Mueller, 304 F.3d 918, 924 (9th
9  Cir.2002).

10         Petitioner contends he is entitled to equitable tolling based on medical
11  complications resulting from sickle cell anemia and the influence of pain medications on his
12  mental faculties.  Specifically, petitioner states he was sent to California Medical Facility in July
13  of 1996 to undergo hip replacement surgery because he had developed aseptic necrosis of both
14  hips.  (Opp'n at 1.)  Petitioner's right hip was replaced in late July, 1996.  Petitioner was then
15  confined to bed until his left hip was replaced in 1997.  (Id.)  However, during the left hip
16  replacement surgery, his left sciatic nerve was damaged, which confined petitioner to a
17  wheelchair until late 1998, when corrective surgery was performed.  (Id.)  Petitioner avers that
18  during this time he was on high doses of narcotics because petitioner "stayed in severe pain."
19  (Opp'n at 2.)

20         In 2004, petitioner was experiencing more pain in his left hip, and tests revealed
21  petitioner had developed an infection in his prosthesis, requiring yet another surgery.  (Opp'n at
22  2.)  The old prosthesis was removed and an antibiotic spacer was put in to resolve the infection
23  before the new appliance could be installed.  (Id.)  Petitioner went without a hip for about a year,
24  until 2005, when the new prosthesis was put in.  (Id.)  Petitioner avers that after this surgery
25  petitioner needed more narcotics and is presently on 120 mg of morphine every day, rendering
26  him "disoriented and unable to argue the complexities of this case after [1996.]"  (Id.)

1    Petitioner has provided 83 pages of medical records, most of which are
2 medication administration records. (Docket No. 16.)
3    Respondent argues petitioner's contentions are belied by the record. On August
4 12, 2008, respondent lodged, inter alia, copies of social service histories from health record
5 reports, docket sheets from United States District Court cases petitioner was prosecuting,[7] and a
6 log of petitioner's inmate appeals. (Id.)[8] Respondent contends these records demonstrate
7 petitioner has not suffered from mental incompetency or mental illness of any kind and that
8 petitioner was well enough to diligently prosecute three federal lawsuits in this court in 2003,
9 2004 and 2005, and a steady stream of administrative appeals beginning in 2001 and continuing
10 through 2008. (Lodged Documents F & G (36 administrative appeals).)
11    The records reflect that petitioner's avascular necrosis was diagnosed by x-ray on
12 February 5, 1996. (Opp'n, Ex. 1 at 1.) Petitioner's history of present illness was described in Dr.
13 Bozic's preoperative history and physical examination report:

> [Petitioner] underwent bilateral staged total hip replacement in
> 1996 and 1997. His left hip did well until 2002 when he developed
> an abscess of the left hip. He was treated locally with irrigation
> and debridement and retention of the components. He has had
> severe pain in the left hip since that time. . . . [Petitioner]
> complains of severe pain in the left hip that limits his activities of
> daily living, as well as ambulation. [Petitioner] also states that at
> the time of his original hip replacement in the late 90s, his sciatic
> nerve was damaged, resulting in a foot drop on the left side.

19 (Opp'n, Ex. 1 at 13.)
20 /////
21 /////
22 /////

---

[7] A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

[8] These lodged documents are marked by letters of the alphabet and will be referenced by their assigned alphabet letter. (For example, Lodged Document A.)

1    Petitioner's right hip was replaced in the 1996.[9]  Petitioner's left hip was replaced
2 on or about June 12, 1997, and he was discharged from the hospital on July 23, 1997.  (Opp'n,
3 Ex. 1 at 2.)  Petitioner was prescribed Oxycodone for the pain.  (Id. at 3.)
4    On December 13, 2002, petitioner was admitted to the hospital for his an infection
5 to his left total hip replacement and was discharged on December 16, 2002.  (Opp'n, Ex. 1 at 6.)
6 On January 29, 2004, petitioner was admitted for post-left hip hardware removal and placement
7 of antibiotic spacer.  (Opp'n, Ex. 1 at 7.)  On August 23, 2004, the spacer was removed and a
8 new left hip appliance was put in.  (Opp'n, Ex. 1 at 15.)
9    The records reflect that petitioner was prescribed various pain medications:
10 Oxycodone, Demerol, Demerol with Vistaril, Demerol and Tylenol #3, and Morphine,
11 throughout 1996 and 1998 and February 2002 through April 14, 2005.  From February 7, 2007
12 through June 3, 2008 petitioner was prescribed primarily Morphine tablets by mouth.  (Opp'n,
13 Ex. 1 at 22-28, passim.)
14    However, petitioner has failed to demonstrate how these various procedures and
15 pain medications prevented him from pursuing this case over the course of almost ten years.
16 Indeed, the Licensed Clinical Social Worker who interviewed petitioner on February 3, 2004,
17 noted petitioner "was feeling OK until 2002," when he developed the abscess in his left hip.
18 (Lodged Document A.)  Petitioner was not taking any psychiatric medications and denied
19 depression or drug abuse.  (Id.)  He reported "his sleeping was not good due to pain."  (Id.)  The
20 social worker described petitioner as alert, with no evidence of confusion, delusion or
21 hallucinations, and ultimately concluded petitioner did not need a psychiatric consultation.  (Id.)
22    On May 25, 2004, petitioner was interviewed by another social worker who
23 reported petitioner had been hospitalized on May 20, 2004 due to severe left hip pain.  (Lodged
24 Document B.)  Petitioner described his pain as very severe and they discussed ways to distract

---

[9] None of the records provided the actual date of this surgery.

petitioner from the pain. (Id.) Petitioner reported he had been sleeping and eating well. (Id.) Petitioner "enjoys both reading and watching television." (Id.) The social worker concluded there was no need for a psychiatric consultation:

> it appears remarkable that [petitioner's] mental outlook is as good as it is. He has a great deal of psychological stamina and appears to be doing far better than many individuals would do under similar circumstances.

(Id.) Petitioner was screened for mental health issues in 2007 and none were found. (Lodged Document D.) On April 12, 2007, petitioner received a Comprehensive Accommodation Chrono noting that petitioner was medically unassigned (no job duties), walks with a cane and has wheelchair accommodations. (Lodged Document E.)

The court finds that petitioner has "made no factual showing of mental incapacity." Lawrence v. Florida, ___ U.S. ___, 127 S. Ct. 1079 (2007).

It is clear that petitioner has suffered greatly from his sickle cell anemia, the osteonecrosis, a damaged sciatic nerve, and multiple operations required to address same. Petitioner's medical condition may have made it extraordinarily difficult to pursue his legal remedies in a timely fashion. See Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 540-41 (9th Cir.1998) (en banc), cert. denied, 526 U.S. 1060 (1999)[10] (applying equitable tolling where petitioner's mental incompetence rendered him unable to assist in his own defense); cf. Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir.1999) (civil case applying equitable tolling where petitioner's condition hindered them from cooperating with counsel). Given the nature of petitioner's medical condition and the numerous operations required and the severe pain involved, the court would grant petitioner equitable tolling for the years 1996 through 1998, after repair of the damage to his sciatic nerve.

---

[10] Overruled in unrelated part by Woodford v. Garceau, 538 U.S. 202, 123 S.Ct. 1398 (2003)(petition was not "pending" before district court on effective date of AEDPA, thus amendments to habeas corpus statute effected by AEDPA applied).

However, petitioner has made an insufficient showing for the periods 1999 through 2002, when the record reflects that he was doing well until 2002. Petitioner has not shown any efforts to request law library time or assistance in pursuing the instant claims during that time frame. The fact that he was capable of filing numerous inmate appeals during this time frame rebuts his claim that he was unable to address the instant claims.

While this court might also be inclined to grant equitable tolling for the period in 2004 when petitioner was having more operations, by 2004, the statute of limitations period had run. State habeas petitions filed after the one-year statute of limitations has expired do not revive the statute of limitations and have no tolling effect. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.2003); Jimenez v. Rice, 276 F.3d 478, 482 (9th Cir.2001). Thus, this court need not decide whether petitioner was entitled to equitable tolling for any period after 2002.[11]

Because petitioner is not entitled to equitable tolling for the entire period, the instant petition is time-barred and must be dismissed.

In accordance with the above, IT IS HEREBY RECOMMENDED that respondent's April 11, 2008 motion to dismiss be granted. (Docket No. 11.)

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that

/////

/////

/////

---

[11] Arguably, however, the fact that petitioner pursued three federal lawsuits in federal court during 2003 - 2005 rebuts his alleged inability to pursue the instant claims during that time frame as well. A review of those cases reveals that petitioner was filing documents in 2004 and 2005.

8

failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 11, 2008.

                                              UNITED STATES MAGISTRATE JUDGE

/001; fraz0073.mtd